IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCISCO ZEPEDA, #Y30997, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1386-RJD |
| ) | |
| LORI CUNNINGHAM, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants Luking, Shah, and Stover's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58) and Defendant Cunningham's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 64). For the reasons set forth below, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58) is **GRANTED** for Defendant Stover and **DENIED** for Defendants Luking and Shah. Defendant Cunningham's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 64) is **DENIED**.

**Background**

On June 28, 2022, Plaintiff Francisco Zepeda, an individual in custody with the Illinois Department of Corrections ("IDOC"), who was at all times relevant, incarcerated at Lawrence Correctional Center ("Lawrence"), filed his Complaint pursuant to 42 U.S.C. § 1983, alleging various violations of his Constitutional rights. (Doc. 1). On December 9, 2022, the Court entered

its Merit Review Order, consolidating Plaintiff's allegations into a single claim against Defendants: Eighth Amendment deliberate indifference claim against Vipin Shah, M.D. ("Shah"), Sara Stover, NP ("Stover"), and Carissa Luking, NP ("Luking") for delaying Plaintiff's sleep study and access to a CPAP machine. (Doc. 13, p. 3).

In his Complaint, Zepeda alleges that, prior to entering IDOC custody, he was diagnosed with sleep apnea and prescribed a CPAP machine. (Doc. 1, p. 3). On August 16, 2018, Zepeda was transferred to Lawrence, where he alleges he informed medical staff of his need for a CPAP machine due to his medical condition. (*Id.*). Zepeda claims that from the time of his intake in August 2018 through November 30, 2020, he suffered from high blood pressure readings (185/125, 186/101, 170/115, 198/100, 198/130), as well as headaches, dizziness, heart palpitations, swelling in his legs, and difficulty swallowing. (*Id.* 3-4). He alleges that on numerous occasions during that timeframe he informed Defendants Shah, Stover, Lynn Pittman, and Luking of his prior diagnosis of sleep apnea and need for a CPAP machine and that each Defendant merely indicated that he would be referred for a sleep study or a CPAP machine, but Zepeda never received the study. (*Id.*). Plaintiff further alleges that his wife specifically spoke to Lawrence Healthcare Unit Administrator, Defendant Cunningham, about his need for a CPAP machine, and Cunningham stated she would look into it. (*Id.*). Zepeda also contends he sent a request to Cunningham on two occasions regarding that matter. (*Id.*). He claims that he did not have a sleep study until March 2, 2021, and did not receive the CPAP until June 21, 2021. (*Id.*, p. 4). Plaintiff states in his Complaint that on July 30, 2020, he filed Grievance # 08-20-001, dated July 30, 2020 ("Grievance # 08-20-001") regarding this matter, thus exhausting all administrative remedies available to him. (Doc. 1, pp. 2-4, pp. 8-10).

**Defendants' Motions**

On July 3, 2023, Defendants Luking, Shah, and Stover filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58). Defendant Cunningham filed her own Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies on August 3, 2023. (Doc. 64). Defendants attach to their Motions a list of the Plaintiff's grievances for medical treatment he received during the time of his incarceration at Lawrence (Doc. 59-1, p. 11). Defendants claim there is only one grievance in the record, Grievance # 8-20-001, that relates to Plaintiff's Complaint. (Doc. 59; Doc. 65). Defendants do not deny that Plaintiff followed the proper procedures to exhaust Grievance # 8-20-001 at the facility level and then at the ARB level. (Doc. 59, pp. 9-10; Doc. 65 pp. 6-7). However, they argue that Grievance # 8-20-001 did not exhaust Plaintiff's administrative remedies against them because it does not name or describe them, nor does it discuss their alleged misconduct. (*Id.*). Defendants Luking, Shah, and Stover's motion further discusses four other medical grievances Plaintiff filed during his incarceration at Lawrence (Grievances # 01-21-036, # 01-21-296, # 04-21-012, # 04-21-013), which they argue also did not exhaust Plaintiff's administrative remedies against them since they do not relate to Plaintiff's allegations in the Complaint. (Doc. 59, pp. 3-5).

**Grievance # 8-20-001**

Grievance # 8-20-001, dated July 30, 2020, grieves issues related to Plaintiff's CPAP machine and a request for a sleep study. (Doc. 59-1, pp. 16-34; Doc. 59-2, pp. 31-39). The grievance was received by the Chief Administrative Officer ("CAO") on August 4, 2020, was deemed emergent, and states as follows:

> Since August 2018 I have been requesting a CPAP machine to treat my sleep apnea that I was diagnosed with in 2007 by a family Doctor. I have given the run around for two years as to why I have not received my CPAP machine. I was told I had to sign a medical release to get my sleep study. I was told I had to have a CPAP sent to me by my family. I signed the medical release paperwork three times over last two years with result or being informed of the progress of my request for a CPAP. Finally I was told that all I needed to do was complete a questionnaire about sleep apnea. I completed the questionnaire and was recommended for a sleep study. On July 15th I saw Doctor Pittman and asked about my sleep study and when she looked in my file she found that my sleep study was already approved in January 2020 by the medical board. Dr. Pittman told she would have my sleep study scheduled and to date I have not had my sleep study. I need my CPAP to help with my CHF, fluid retention, Hypertension, AFIB and sleep. The last time I saw the Doctor was July 15, 2020 my blood pressure was 180/122 with me already taken five medications to regulate it. My family doctor found that the CPAP helped me loose and maintain a healthy weight from excess fluid loss and then my blood pressure was regulated with the CPAP and the current medication I am receiving.

(Doc. 59-1, 18-19).

The grievance officer received the grievance on August 5, 2020. (Doc. 59-1, 17). The record further reveals that the grievance officer sent Grievance # 08-20-001 along with correspondence to the Lawrence Healthcare Unit, stating: "You have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements . . ." (Doc. 59-2, pp. 38-39). It appears that Defendant Cunningham responded to the grievance officer's inquiry on August 13, 2020, stating that she reviewed the Plaintiff's medical chart and that sleep studies were "on hold due to COVID 19 Pandemic and IDOC Administrative Quarantine." (*Id.*, p. 39). On August 24, 2020, the grievance officer incorporated Defendant Cunningham's answer to his response and recommended that the grievance be deemed moot as sleep studies were put on hold due to the COVID-19 pandemic:

> Per Healthcare Unit Administrator Cunningham, "August 13-2020 Re: Offender Zepeda Y30997 Review of medical chart. Sleep studies are on hold due to COVID 19 Pandemic and IDOC administrative Quarantine. Offender will be notified when sleep study resumes . . . ."

Page **4** of **18**

(Doc. 59-1, 17). The Chief Administrative Officer ("CAO") concurred with the grievance officer's recommendation on August 31, 2020, and Plaintiff signed the Appeal to the Director on September 9, 2020. (Doc. 59-1, 17). With the grievance, Plaintiff sent to ARB eleven (11) pages of his medical records, including a medical note by Defendant Luking, dated June 29, 2020, in which she refers to "sleep apnea" and further states that Plaintiff was "asking about sleep study." (Doc. 59-1, p. 26). The attached medical record also included Plaintiff's Medication Administration Record for the relevant timeframe in which Stover is listed once as the prescribing health care provider of Plaintiff's medication, Docusate Sod., in 2019. (*Id.*, p. 30). The relevant medication note, however, does not contain any reference to Plaintiff's alleged high blood pressure, sleep apnea, or his request for a sleep study and a CPAP machine. (*Id.*).

Plaintiff also sent to the ARB the following letter dated September 8, 2020, titled "Rebutal to Grievance Counselor's Recommendations and Findings" ("Rebuttal Letter"):

> I was diagnosed with sleep apnea in 2009 by my family physician and a CPAP has been part of the therapy to treat both my sleep apnea and hypertension since 2007. I have been try to get my CPAP machine from from Lawrence Correctional Center since arriving in July of 2018. The current doctor, Shah, told me I needed my sleep study from my family physician to get my CPAP so I have signed three medical releases trying to get my old sleep study while following up on why I have not been giving a sleep study or my CPAP here at Lawrence Correctional Center. Then Doctor Shah tells me I need to have my family send me a CPAP machine in order to get the medical equipment and therapy I need. Then I saw Doctor Pittman who informed me that all we had to do was a questionaire and if I met the criteria she would forward the recommendation which was sent and approved by Wexford in February of this year, 2020 pre Covid, pre quaranteen. The CAPA is not just to ensure that I do not die in my sleep, but also keep fluid from building up in my body, around my heart and to keep me from damaging my kidneys, and keeps my blood pressure maintained so I do not die from a heart attached or stroke. My last blood pressure reading was 160/120 and that so with the enclosed list of medications I am already taking to treat my high blood pressure and heart arrythmia. We are no longer on quaranteen and my sleep study is administered in house so there is no reason to deny me for two years now, the medical care I need and deserve. If they are unwilling to provide me with a sleep study I request to be my CPAP machine until they are able to give me a sleep study as the machine has

> an automatic setting for the therapy I need and medical staff can get a ready from the machine to if I am using the machine, how often and what pressure was used to treat my sleep apnea.
>
> The medical neglect here seems to be deliberate as this is the second severe issue I have had. In October of 2018 I try to get treated for a possible ear infection when I had blood leaking out of both of my ears. It took over six months to be seen and over two years I have had three ear infections where as I have never had an ear infection before coming to Lawrence Correctional Center. It also took about two years for me to be seen by an audiologist who determined that I have mild hearing loss most likely due to the untreated ear infections and prolonged wearing of earbuds to listen to my Television.
>
> All I am seeking at this moment is to be treated like a human being and be given proper medical care.

(Doc. 59-1, pp. 33-34). On September 14, 2020, the Administrative Review Board ("ARB") received Plaintiff's appeal along with the Rebuttal Letter and the relevant medical record. (*Id.*) On March 24, 2021, the ARB denied the grievance, finding that the issue was appropriately addressed by the facility Administration. (*Id.*, p. 16).

**Grievances # 01-21-036, # 01-21-296, # 04-21-012, # 04-21-013.**

Grievance # 01-21-036, dated January 1, 2021, grieves issues regarding hearing aids. (Doc. 59-1, pp. 39-44). Grievance # 01-21-296, dated January 18, 2021, grieves issues regarding medical treatment for sinus issues. (*Id.*, pp. 35-38). In this grievance, he discusses sending three request slips to Luking requesting treatment for difficulty breathing, dry sinus, and nose bleeds. (*Id.*). Grievance 04-21-013, dated March 30, 2021, grieves issues relating to Plaintiff's request for copies of his medical record and dental record. (*Id.*, pp. 12-15). Grievance # 04-21-012, dated March 30, 2021, grieves issues regarding dental treatment. In the grievance, he claims that his dental treatment was postponed due to his high blood pressure. (Doc. 59-2, pp. 7-10, 13-14).

**Plaintiff's Response**

On September 7, 2023, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies in which he claims that he properly exhausted administrative remedies through Grievance # 8-20-001. (Doc. 67, p. 7). Plaintiff acknowledges that some of the Defendants were not named in his original grievance. (*Id.*). He claims, however, that such defect was cured when he sent to ARB Grievance # 8-20-001 along with the Rebuttal Letter and relevant portions of his medical record. (*Id.*). Plaintiff alleges that those documents sufficiently identified the Defendants but does not point to the specific portions of the record where each one of the Defendants is named or described. (*Id.*). He further claims that IDOC failed to advise him of any deficiencies in Grievance # 8-20-001, despite having done so with respect to other grievances, and that proper investigation of his grievance and medical record would have put them in notice of the identity of the involved Defendants. (*Id.*, pp. 10, 80). Regarding Cunningham, Plaintiff does not seem to contend that she was identified or described in Grievance # 8-20-001, the Rebuttal Letter, or the relevant medical record attached to it. (*Id.*, p. 7). He claims, however, that she was aware of his complained-of injuries due to the multiple communications she had with him and his spouse and because she had access to Plaintiff's medical records. (*Id.*, pp. 7, 10, 12, and 14). Plaintiff attaches to his response numerous exhibits, including his and his wife's affidavits (*Id.*, pp. 12-14), copies of Grievance # 8-20-001, the Rebuttal letter to the ARB—without the relevant portions of his medical record, Grievance Officer's Response to Grievance # 8-20-001, and ARB's Response to the same. (*Id.*, pp. 15-24). Plaintiff further attaches

to his response, as separate exhibits, various portions of his medical record, including pages that were not sent to ARB with Grievance # 8-20-001. (*Id.*, pp. 25-66).[1]

After a careful review of the arguments and evidence set forth in the parties' briefs regarding the issue of exhaustion, the Court determined that an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is not necessary.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most

---

[1] In support of his claim that prison officials failed to notify him of any deficiencies as to Grievance 08-20-001, Plaintiff attaches to his response a copy of Grievance 2581-09-22, dated October 6, 2022, notifying Plaintiff of his failure to satisfy the requirements of section 504.810. Plaintiff does not, and could not, claim that Grievance 2581-09-22 exhausted his administrative remedies as to this complaint, as it was submitted after June 28, 2022, when the Complaint was filed.

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem, to his or her institutional counselor unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final

determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

## **Discussion**

Based on the briefing of the parties and the evidence in the record, the Court finds that Grievance # 08-20-001 was fully exhausted, and the only question is whether the grievance exhausted the claims in this lawsuit against Defendants Shah, Luking, Stover, and Cunningham.

While grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint, this condition is tempered in that an offender who does not know the name of each person who is involved in the complaint may simply describe the individual with as much detail as possible. ILCS § 504.810(c). The Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir.2011); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010). Thus, not naming the defendants in a grievance is "'a mere technical defect' where the inmate sufficiently

describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (quoting *Maddox*, 655 F.3d at 722). So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842–43 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006).

In *Bandala*, the court found that the prisoner plaintiff had furnished enough information to put the ARB on notice to address his claims and properly exhaust his administrative remedies despite his initial failure to identify or sufficiently describe the defendants in his grievance form. *Bandala*, 188 F. Supp. 3d at 842–43. There, the plaintiff filed a grievance alleging he was physically attacked by seven correctional officers on duty. *Id.* at 842. While the grievance form "did not identify the correctional officers by name or physical description . . .[it] provided the ARB the date, location, and time of the attack, and . . . indicated that [the plaintiff] was attacked by seven correctional officers then on duty." *Id.* The court found that "this information should have provided the ARB enough details to look into Plaintiff's allegations of an assault and the possible individuals involved given the time and location." *Id.* Importantly, the court noted that "even if [the plaintiff's] original grievance did not properly identify or describe the correctional officers, he filed an additional letter to the ARB (in response to the denial of the grievance) further describing the individuals." *Bandala*, 188 F. Supp. 3d at 843. Because "there is nothing in the administrative code which prevents [a plaintiff] from remedying or resubmitting a grievance," the court denied the defendant's motion for summary judgment on the basis of the plaintiff's failure to exhaust administrative remedies. *Id.* (emphasis added).

**Shah and Luking**

Defendants' argument that Grievance # 08-20-001 does not satisfy the requirements of 20 Ill. Admin. Code §504.810 parallels the defendant's rejected argument in *Bandala*. Like the plaintiff there, here, Plaintiff did not identify or describe Shah and Luking in his original grievance. (Doc. 59-1, p. 18).  However, similarly to the plaintiff in *Bandala*, Plaintiff provided sufficient information to prison officials, when he sent the ARB his appeal along with 11 pages of medical records and the Rebuttal Letter.  (*Id.*, pp. 22-34).   Defendant Shah is identified in Plaintiff's Rebuttal Letter. (*Id.*, p. 34). Plaintiff's attached medical record contains a medical note by Defendant Luking, dated June 29, 2020, in which she refers to "sleep apnea" and further states that Plaintiff was "asking about sleep study."  (*Id.*, p. 26).  As the court noted in *Bandala*, this information was, as a matter of law, sufficient to provide prison officials "an opportunity to address [Plaintiff's] claims internally prior to federal litigation," thus fulfilling the statutory purpose of exhaustion.  Accordingly, Plaintiff's failure to identify and describe Shah and Luking in his original grievance is not fatal in light of his later supplementation of the grievance with the Rebuttal Letter and the eleven (11) pages of medical record.  Thus, Plaintiff properly exhausted his available administrative remedies with respect to Defendants Shah and Luking, and the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58) is, therefore, **DENIED** as to those Defendants.

**Stover**

Plaintiff's allegations against Stover relate to two medical visits on November 16, 2018, and November 22, 2019.  (Doc. 1, ¶¶17 & 23).  Plaintiff alleged that on November 16, 2018, he was seen by Stover with a blood pressure reading of 185/125, accompanied by headaches, dizziness, and swelling in his legs.  (*Id.*, ¶17).  Plaintiff further informed Stover of his diagnosis

of sleep apnea and the need for CPAP to help control the high blood pressure-related symptoms. (*Id.*). Plaintiff alleged that, on November 22, 2019, he was again seen by Stover with a blood pressure reading of 198/100, headaches, dizziness, heart palpitations, constipation, and swelling in his legs. (*Id.*, ¶23). He alleged that he asked Stover again for a CPAP or a sleep study to treat his sleep apnea and help control his blood pressure. (*Id.*).

**Grievance # 08-20-001**

Stover is not named in Grievance # 08-20-001. (Doc. 65-3, pp. 42-43). She is further not named in Plaintiff's Rebuttal Letter. (*Id.*, pp. 57-58). In the eleven (11) pages of medical record that are attached to Plaintiff's appeal with the ARB, Stover is listed once as the prescribing health care provider of Plaintiff's medication, Docusate Sod., in 2019. (*Id.*, p. 54). The relevant medication note, however, does not contain any reference to Plaintiff's alleged high blood pressure, sleep apnea, or his request for a sleep study and a CPAP machine. (*Id.*). Further, while the original Grievance # 08-20-001 and Plaintiff's Rebuttal Letter state that Plaintiff had been requesting a CPAP machine to treat his sleep since he arrived at Lawrence and that he had been "given the run around for two years," he did not specify to whom he made those requests and if those individuals were health care providers or correctional officers at Lawrence (*Id.*, pp. 42, 57). Simply put, Plaintiff's allegations in his original grievance are broad enough to encompass any health care providers that treated him and any correctional officer he encountered since his transfer to Lawrence  Drawing all reasonable inferences in the light most favorable to Plaintiff, the nonmoving party, the Court concludes that Stover's listing as the prescribing health care provider in 2019 without any link to Plaintiff's complained-of health condition was insufficient to alert prison officials that Stover was one of the health care providers implicated in his grievance. Therefore, the Court concludes that Grievance # 08-20-001 did not exhaust Plaintiff's available

remedies with respect to Defendant Stover. However, the inquiry does not end there since the Court must further examine the other four grievances Plaintiff submitted before filing the Complaint relating to medical treatment that he received in Lawrence.

**Grievances # 01-21-036, # 01-21-296, # 04-21-012, and # 04-21-013.**

Grievance # 01-21-036, dated January 1, 2021, grieves issues regarding hearing aids and does not state any facts that could apprise the prison officials of his complaint for the denial of sleep study and a CPAP machine. (Doc. 59-1, pp. 39-44). Plaintiff does not argue, and the Court's review of the record does support a finding, that Grievance #01-21-036 relates to Plaintiff's Complaint for being deprived of a sleep study and a CPAP machine. Accordingly, the Court finds that Grievance # 01-21-036 did not exhaust Plaintiff's administrative remedies concerning the Complaint.

Grievance # 01-21-296, dated January 18, 2021, grieves issues regarding medical treatment for sinus issues. (Doc. 59-1, pp. 35-38). In this grievance, Plaintiff states that he sent three request slips to Luking asking treatment for difficulty breathing, dry sinus, and nose bleeds. (*Id.*). Plaintiff does not argue, and the Court's review of the record does not support a finding, that Grievance # 01-21-296 relates to Plaintiff's Complaint for being deprived of a sleep study and a CPAP machine. Accordingly, the Court finds that Grievance #01-21-296 did not exhaust Plaintiff's administrative remedies concerning this Complaint.

Grievance # 04-21-013, dated March 30, 2021, grieves issues relating to Plaintiff's request for copies of his medical record and dental record and does not refer to Plaintiff being denied a sleep study and a CPAP machine. (Doc. 59-2, pp. 11-12). Accordingly, Grievance # 04-21-013 does not exhaust Plaintiff's administrative remedies concerning the Complaint.

Grievance # 04-21-012, dated March 30, 2021, grieves issues regarding dental treatment. In the grievance, he claims that his dental treatment was postponed due to his high blood pressure. (Doc. 59-2, pp. 7-10, 13-14).  Defendant Stover is not identified in the Grievance.  (*Id.*). Accordingly, Grievance # 04-21-012 does not exhaust Plaintiff's administrative remedies concerning the Complaint.

Accordingly, Plaintiff did not properly exhaust his available administrative remedies with respect to Defendant Stover.  The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58) is, therefore, **GRANTED** with respect to Defendant Stover only.

**Cunningham**

Defendant Cunningham was at all relevant times the Healthcare Unit Administrator of Lawrence (Doc. 1, ¶ 6).  Plaintiff claimed that, on June 17, 2019, his wife called Cunningham to discuss his sleep apnea diagnosis, unresolved treatment, and symptoms.  (*Id.*, ¶ 21; Doc. 67, pp. 12-14).  He further alleged that he made two requests for a sleep study and CPAP machine to Defendant Cunningham on June 20, 2020, and November 30, 2020.  (*Id.*, ¶¶ 26, 32).  It appears that the crux of Plaintiff's complaint against Cunningham is that, despite being aware of Plaintiff's serious medical condition, she refused to exercise her alleged authority as the Healthcare Unit Administrator and authorize Plaintiff's requests for a sleep study and a CPAP machine.  (Doc. 1, ¶¶ 6, 21,  26, 32, Doc. 67, pp. 12-14).

Plaintiff acknowledges he did not name or describe Cunningham either in Grievance # 08-20-001 or in his Rebuttal Letter and that Cunningham was further not referenced within the medical record he sent to the ARB.  (Doc. 67, pp. 12-14).  He asserts, however, that he exhausted his administrative remedies as to his claims against her because he and his wife had informed

Page **15** of **18**

Cunningham of his complained of injuries and because Cunningham had access to his medical record. (*Id.*). Cunningham's subjective knowledge of Plaintiff's complained of injuries, however, is immaterial to the issue of exhaustion of administrative remedies under 42 U.S.C. § 1997e(a). The requirement of exhaustion of administrative remedies purports to put the prison officials—not the individual defendants—on notice of the grievance so as "to allow them the opportunity to address an inmate's claims internally prior to federal litigation." *Bandala-Martinez*, 188 F. Supp. 3d at 842–43. Therefore, the Court rejects Plaintiff's assertions that Cunningham's subjective knowledge of his complained of injuries or her access to his medical record sufficed to exhaust Plaintiff's administrative remedies against her. The inquiry, however, does not end there since the Court needs to examine whether Plaintiff's grievances contained sufficient information to put prison officials on notice of Cunningham's involvement in his complaint.

While Plaintiff did not name or describe Cunningham either in Grievance # 08-20-001 or in his Rebuttal Letter, the Court finds that those documents contained sufficient information to alert prison officials of Cunningham's involvement in his complaint. In Grievance # 08-20-00, Plaintiff stated that he had been requesting a CPAP machine to treat his sleep apnea since he was transferred to Lawrence and that, for two years, he was "given the run around" by various medical providers as to why he was not receiving one, thus suggesting delays in his treatment and deficiencies in the overall operation of the Lawrence Healthcare Unit. (Doc. 59-2, pp. 32-33). The record further reveals that on August 5, 2020, and August 17, 2020, the investigative officers sent letters to the Healthcare Unit, stating: "You have been identified [in Plaintiff's Grievance # 08-20-001] as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements . . ." (Doc. 59-2, pp. 38-39). Defendant Cunningham responded on August 13, 2020, stating that the sleep studies were on hold due to the Covid-19

pandemic and IDOC's administrative quarantine. (*Id.*). Cunningham's response was incorporated into the Grievance Officer's Report, which was further adopted by the Chief Administrative Officer's Response:

> Per Healthcare Unit Administrator Cunningham, "August 13-2020 Re: Offender Zepeda Y30997 Review of medical chart. Sleep studies are on hold due to COVID 19 Pandemic and IDOC administrative Quarantine. Offender will be notified when sleep study resumes. August 20-2020 Offender Zepeda Y30997 Review medical record. Offender to see ENT to discuss Audiology report 6/25/2020. Consult completed by NP."

(Doc. 59-2, p. 34). Even more, in the Rebuttal Letter, Plaintiff implicitly referenced Cunningham's response to his grievance by stating that the quarantine was over, so there was no basis for continuing to deny him the sleep study. (Doc. 59-1, pp. 33-34). Grievance # 08-20-001 and the Rebuttal Letter together suggest delays in Plaintiff's medical treatment for his sleep apnea and deficiencies in the operation of the Lawrence Healthcare Unit as a whole, implicating Cunningham as the unit's Administrator. This information was before the ARB when it reviewed Plaintiff's appeal to the denial of Grievance # 08-20-001 and found that the complaint was appropriately addressed by the facility Administration. (Doc. 65-3, pp. 41). Accordingly, the Court finds that Grievance # 08-20-001 sufficiently alerted prison officials of Defendant Cunningham's involvement in Plaintiff's complaint for denying him a sleep study and a CPAP machine. The Court concludes that Grievance # 08-20-001 exhausted Plaintiff's available administrative remedies concerning Defendant Cunningham. Defendant Cunningham's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 64) is **DENIED.**

**Conclusion**

For the reasons stated above, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 58) is **GRANTED** for Defendant Stover and **DENIED** for Defendants Luking and Shah.  Defendant Cunningham's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 64) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 22, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**